FIDELA PALERMO, Petitioner, *v.* DISTRICT COURT OF PONCE, DOMINGO SEPÚLVEDA, JUDGE, Respondent. ESPERANZA PALERMO, Petitioner, *v.* DISTRICT COURT OF PONCE, DOMINGO SEPÚLVEDA, JUDGE, Respondent.

Nos. 1227 and 1228.   Argued February 17, 1941.—Decided March 10, 1941.

192

*E. Pérez Casalduc,* for petitioners. *R. Hernández Matos,* for the intervener, plaintiff in the principal suit.

Mr. Justice Travieso delivered the opinion of the Court.

The facts and questions of law raised in these two appeals are identical and therefore we will decide them in one opinion.

Tomás Ortiz, Jr., filed two complaints before the Municipal Court of Ponce, one against Fidela Palermo and another against Esperanza Palermo and in each of them he alleged substantially as follows: that the plaintiff is the owner of a lot of 623 square meters; that on April 8, 1940, he rented a parcel of said lot to the defendant for a monthly rental of $5.00 payable at the end of each month but the term of the lease contract was not specified; that on June 1, 1940, the plaintiff notified the defendant in writing that he was terminating the contract of lease after the 30th of said month and required her to leave the lot free and clear for him at the first of July, 1940; that on the lot rented to her, the defendant had built a house;. that the defendant continues in possession of the lot and has refused to leave it. Based on these allegations, the plaintiff prayed in both cases for the ejectment of the defendants.

Fidela Palermo answered with a general issue and as a special defense alleged: that on January 29, 1939, she acquired the house situated on the plaintiff's lot by purchase from Elena Palermo; that the latter acquired said house in 1922 by purchase from Alejo Rivera Borrero, who had ac-

quired it in 1920 by purchase from the spouses Espinet; that said house was built in good faith more than thirty years ago with the consent of the owner of the lot and has been during all this time in possession of the defendant and her predecessors in interest, publicly, peacefully, and as owners. The defendant also alleged that she had offered to pay the plaintiff the value of the land or to sell him the house and that he had refused to accept either offer. Esperanza Palermo's answer is substantially the same.

Upon hearing the cases in the municipal court, the ejectment of the defendant was ordered based on "the termination of the lease contract." Both cases were appealed to the district court where judgment was rendered against the defendants and they have come to this Court for a writ of certiorari for the review and annulment of the said judgment.

The bases of the petitions for certiorari are in substance as follows:

1. That the district court did not have jurisdiction to hear the case on appeal because the municipal court had not had jurisdiction to hear the case originally, since there was no contract of lease in existence between the plaintiff and the defendant.

2. That the allegation of the plaintiff in regard to the existence of a contract of lease has been made in order to deprive the defendants of the right of appeal to the Supreme Court which they would have had if the complaint had been filed before the district court and also that the cases of *Rivera* v. *Santiago,* 56 P.R.R. 361, and *Diaz* v. *Ramos,* 51 P.R.R. 798, will not be applicable to the case.

At the hearing of the petition the petitioners offered a certified copy of the notes taken by the stenographer in the second hearing before the district court and as there was no objection it was admitted for the only purpose of determining whether or not there was a jurisdictional question involved. We shall summarize the evidence.

The plaintiff Ortiz testified that he bought the lot from the sisters Giraud on April 8, 1940; that when he bought it

he went with his father-in-law, Miguel Alvarez, to notify the Palermos and told them that he had bought the lot and that from that date on they would have to pay him the rent for the lot; that Esperanza Palermo agreed to pay the same rent that she paid before, that is, $5.00 a month, and the other agreed to pay $4.00 a month; that after having been so notified they paid the agreed rental for the months of April and May, 1940; that on the first of June he sent the defendants a letter which was admitted in evidence as Exhibit "B" of the plaintiff. On cross examination he testified that he knew the defendants for approximately ten years and that during that time he always knew them to be living in the house situated on the lot object of the unlawful detainer; that when he bought the land he did not buy the house of the defendants; that when he notified the defendants that he had bought the lot and that from that date on they would have to pay him, they accepted; that he does not remember having testified in the municipal court that he merely required the defendants to vacate the property; that the letter of May 23, 1940, written by Attorney Noriega to the defendants, was written with his consent.

The witness Aníbal Rivera testified only that it was he who delivered the letter (Exhibit "B") of the plaintiff to each of the defendants on June 3, 1940.

Miguel Alvarez testified that he is father-in-law of Ortiz, the plaintiff; that together with Ortiz he went to notify the defendants; that the latter accepted that they would pay Ortiz the same that they had paid the previous owners; that he had charge of renting the properties of his son-in-law and of the collection of the rentals; that he had collected rentals for two months from the defendants and given them receipts signed by him. On cross examination he denied that he had testified before the municipal court that he collected the rentals as owner of the property.

The defendant Fidela Palermo testified that she lived on a house situated on the land of the plaintiff since 1923; that

the house belongs to her because she bought it from Elena
Palermo; that the house is more than forty years old since
at the time of the San Ciriaco cyclone it was there already,
in the same place; that she did not enter into any contract
of lease with the plaintiff Ortiz; that she knows the sisters
Giraud to whom she paid $5.00 a month for the rental of
the lot since 1923 until 1940; that in April, 1940, Miguel
Pujols, husband of Teresa Giraud, previous owner of the
lot, went with Miguel Alvarez to visit the defendant and
told her: "This man, Miguel Alvarez bought this . . .";
that she paid two months and that the receipts are signed
by Miguel Alvarez; that she has never entered into a con-
tract or agreement with the plaintiff Ortiz; that when she
bought the house she was told that she could live there
indefinitely by paying $5.00 monthly; that Pujols, referring
to Miguel Alvarez, said: "This man is in charge now, we
sold to him" and that she should pay him the $5.00 a month
in the future; that she pays taxes on the house which is
worth $400; that she pays $5.00 for the occupation of the
lot because she has been the owner of the house for twenty
years and the mother of the Girauds told her that she could
use the house indefinitely and that she could buy the house
and did not have to worry since they did not need the lot;
that she never entered into a written contract with the
Girauds.

The testimony of the defendant Esperanza Palermo was
essentially identical to that of the other defendant.

Rafael Soltero Palermo testified that he sold one of the
houses in controversy to his uncle José Ramón Palermo, who
sold it to the defendant Esperanza Palermo; that he acquired
the house by purchase from Gregoria Nieves; that during the
time that he was in possession of the house he paid the owners
of the lot $4.00 a month; that when he bought the house, he
called the owner of the lot and the latter told him that
he could use it all his life, since the only thing that he was

interested in was the $4.00 monthly rental; that their agreement was made orally.

The last witness of the defendants was their attorney, Eduardo Pérez Casalduc, who said: that at the hearing before the municipal court the plaintiff Ortiz testified that he had gone to the defendants merely to ask them to leave the house, and he denied that there had been any contract with the defendants; he also said that Miguel Alvarez testified that he had collected the rentals as owner of the farm and not as the agent of the plaintiff.

The plaintiff acquired the lot on April 8, 1940, knowing that the two houses existing thereon belonged to the defendants and that they paid $5.00 and $4.00 a month respectively for the use of the lot. When he became the owner of the land, the plaintiff accepted and ratified the lease contract entered into by the previous owner and the defendants when he notified them that from that date on they should pay him the rentals. This was done by the defendants when they paid the rentals for April and May, 1940, as appears from their testimony and from the receipts which they presented.

The letter of May, 1940, written by the lawyer of the plaintiff and asking the defendants to remove their house and deliver possession of the lot within a term of fifteen or twenty days could not have the effect of converting the defendants into possessors at sufferance of the land occupied by their house. At the date that said letter was written, the plaintiff had already accepted the contract existing between the defendants and the previous owners of the lot and he had received the rentals for April. In a like manner, when the defendants paid Ortiz or his agent, Miguel Alvarez, the said rentals, they acknowledged Ortiz as the owner of the lot and they accepted their own condition as lessee.

There can be no doubt whatsoever that the legal nexus which originally existed between the former owners of the lot and the persons who built the house under the agreement

to pay a monthly rental for the lot are those of lessor and lessee.

■ Is the lapse of time sufficient, as alleged by the attorney of the defendants, to change that relation of lessor and lessee in such a manner so that what was originally a lease be converted into an emphyteusis annuity so that the owner of the house may continue using the lot perpetually as long as she pays the stipulated monthly amount? No legal provision or jurisprudence has been submitted to our consideration to sustain this theory which was brought for the first time at the hearing before the district court. The theory in the answer was that the defendants were possessors at sufferance and had built in good faith on lands of another with the consent of the owner of the land which would give them the right to demand that he pay them the value of the houses.

Considering the facts set forth and as the plaintiff admitted that before he bought the farm he knew that the defendants were the owners of the houses and that they paid a monthly rental for the use of the lot; and it appearing from the evidence that the plaintiff accepted and expressly ratified the existing contract, we feel bound to hold that the legal relations between the plaintiff and the defendants are those of lessor and lessee.

■■ Are the decisions of this Court in *Rivera* v. *Santiago,* 56 P.R.R. 361 and *Carrasquillo* v. *Ripoll,* 56 P.R.R. 301, applicable to this case? In these cases it was held that houses built on lands of another in good faith, pass by right of accesion to the owner of the land if he pays the builders the cost of the materials and of labor; and also that a summary proceeding for unlawful detainer will not lie against the person who built with the consent of the owner of the land, unless there is an agreement which regulates the rights of the litigants with respect to the building.

The only difference between the cases cited and the present is that in the former the builders and owners of the houses built on another's land were in possession of the land

198

at sufferance without paying any rental whatsoever, and in the present case the builders and defendants, as successors in interest, have paid for more than twenty years a monthly rental for the use of the land. The difference is not, in our opinion, so substantial as to make said jurisprudence inapplicable. If the predecessors in interest of the defendants built in good faith with the consent of the owners of the lot and they as well as the defendants agreed to ·pay and always paid punctually a monthly rental for the use of the land, why should their right be less than that of persons building under the same circumstance but not paying anything for the use of the land? We see no reason whatsoever to justify the application to the case of a different rule than that established in the aforesaid cases and which originated in the case of *Ermita de Nuestra Señora, etc.* v. *Collazo,* 41 P.R.R. 594. See Sections 287, 297 and 382 of the Civil Code (1930 ed.).

In the present cases simple lease contracts in which the lessee promised to pay a monthly rental for the use of a house belonging to the lessor are ·not involved. The situation in these cases which we are considering is different. The owner of the land rented it to the defendants for the express purpose of constructing buildings of a permanent nature as dwellings. The defendants and their predecessors in interest built the houses in good faith; and nothing was agreed upon between the owner of the land and the builders to regulate the rights of both parties in regard to the buildings.

As they were constructions of a permanent nature, we cannot presume that the intention of the parties was that the owner of the land could by a simple notice giving thirty days, force the builder to destroy the building since an attempt to remove it would be equivalent to the destruction of it.

In the case of *Rivera* v. *Santiago, supra,* in affirming the judgment dismissing the complaints for unlawful detainer, we said:

"As it does not appear from the record that the parties agreed as to the amount of such claims, and as such claims cannot be determined in the summary proceeding of unlawful detainer, it is evidence that the complaints must be dismissed, without prejudice to bringing the proper ordinary action in which the rights of both parties might be determined."

For the foregoing reasons the petition should be granted, the judgments of the District Court of Ponce annulled in both cases and both complaints should be dismissed without prejudice to any rights which plaintiff may have to file whatever proceedings he may believe convenient for his protection.

Mr. Justice Todd, Jr., took no part in the decision of this case.